Dr. Mary Louise Serafine v. Tim Branaman Mr. Guthrie May I please the court? Yes, sir. Andrew Guthrie for the appellant, Dr. Mary Louise Serafine. The Texas Psychologist Licensing Act is overbroad under the First Amendment. The statute fails for other reasons, but in my time before the court today, I'd like to focus at least initially on the overbreadth claim, because the statute defines the forbidden practice of psychology in such a way that sweeps in all manner of speech about behavior and prohibits, without a license to practice psychology from the state, the services provided by Weight Watchers Consultants, suicide hotlines, and even golf coaches. As a result, Your Honors, the statute is overbroad and should be facially invalidated under the overbreadth doctrine. Now, the district court in addressing this argument Before you get into that, let me make sure I understand what your client believes she is barred from doing. She does have a lawyer's license, and according to the code, lawyers and other licensed professionals who are permitted by their licenses to engage in activities that would be covered by what these particular examiners and licensed board would be governed control, that they can go ahead and practice. And looking at the code, it seems to me that at least for, I forget if it's called medical counseling or family counseling, an attorney is entitled to engage in that counseling, which also sounds like the sort of counseling she wanted to do. But she may not use the name psychologist or the word psychologist. Now, does she, is it the argument that she cannot engage in that kind of counseling, or is this all about whether she can use the name psychologist? Well, and I think the State has suggested below in the testimony at Trial. Excuse me, Your Honor. I don't have it in front of me at the moment,  but as you might suggest, the exceptions would allow it. I'm not asking anything. I'm just reading what it says. It says that she can engage in anything covered by marriage and family therapy. Is what, I mean, she cited it in, your client cited it in her complaint. I haven't seen a lot of mention of it in the briefing, but that's 502.001, 2, and 3. And if that is covered within the practice of law that she's permitted to do under her law license? Well, this says that lawyers can do these things. Right. And so in that case, perhaps she could provide those services. But the issue that we're addressing here is the breadth of this statute. For one thing, those exemptions don't apply to the whole vast swath of unlicensed persons. In the State of Texas, if you don't have a license to do any of those things, you can't perform the broad speech about behavior as contemplated under this statute. Judge Yackel said this was both an as-applied as well as a facial challenge. And so looking at it as an applied challenge and how it affects her, how does this affect her other than not being able to use the word psychologist? And, Your Honor, I think I can draw a distinction here between the two distinct challenges we have at issue here. Dr. Serafin is challenging the titling aspect of the statute as applied to her in her political speech and in her commercial speech. That is, she cannot call herself a psychologist. That's one sort of constitutional challenge we have here. The other constitutional challenge is the breadth of the statute that restricts the practice of psychology without a license to practice. And on appeal, Dr. Serafin is pressing only her facial challenge, her overbreadth challenge, to the practice of psychology provision under the statute that Your Honor just referenced. My understanding is that she's also decided not to continue her counseling practice. Is that right? She has discontinued that practice since the state sent her a cease and desist letter. And the state threatened her with it. So why isn't that on appeal? Is that on appeal? For whatever reason, Your Honor, she has decided to press only the facial challenge on appeal and not the as-applied challenge to the practice of psychology. And the issue there, when Judge Yackel analyzed that claim below, he made two primary errors. The first is he erred in basically excluding this statute altogether from the reach of the First Amendment, notwithstanding the fact that it implicates a content-based restriction on speech, that is, the speech of unlicensed persons that they cannot speak about these principles of behavior. The second mistake Judge Yackel made is he failed to declare this statute unconstitutionally overbroad because of the way that it sweeps in all manner of speech that goes far beyond even what the state has claimed an interest in regulating in this case. Are you referring to speech or behavior that is still within the definition of practicing psychology, or are you saying that the state can regulate the practice but that this goes beyond the practice? Well, I think there's two points there, Judge Smith. One, we're not contesting whether the state can regulate the practice of psychology. The first point is that it is a restriction on speech, so the First Amendment must apply and the state has to clear strict scrutiny. Now, the second issue that you're getting at there is whether these established principles of behavior that the state purports to regulate under the statute actually falls within that interest, the state's interest of the practice of psychology. There was testimony below that this statute goes far beyond whatever interest the state had asserted. The state focused its testimony on the harms that might possibly arise from psychotherapy performed by untrained psychologists. But the statute goes far broader than that. The statute says if you do not have a license to practice psychology, you are not allowed to perform services that involve the application of established principles, methods, and procedures of describing, explaining, and ameliorating behavior. Your Honor, even if we put aside what the practice of psychology is, what the legitimate practice of psychology is, this statute goes far beyond that ambit. You can take the Weight Watchers example I mentioned. In a Weight Watchers consultation, if it's any good, it applies established principles of behavior to avoid cravings, to eat the right thing. That falls under the practice of psychology under the statute. And it says that the state says you need to have a license to practice psychology in order to do that. And it goes on to golf coaches, to Sunday school teachers, to management consultants. There are any number of examples under this statute that would fall under the ambit of the practice of psychology that the state has restricted unlicensed persons from performing unless they have a license. Social workers? Does the state have a separate licensing deal for social workers? It does, Your Honor. And social workers fall under one of the exemptions in 501.004. So again, there are exemptions. The state has tried to carve out areas where they've said if you're doing these other professions, you can practice psychology. But, Your Honors, that actually goes to the overbreadth of the statute. If physicians and lawyers and social workers and clergy are all practicing psychology by simply doing their jobs, that indicates that what we have, a definition here of the practice of psychology, is far broader than anything the state has a legitimate interest in regulating. Well, then tell us what it is where the line should be drawn constitutionally. What is it that the state has a legitimate interest in regulating specifically as it relates to psychology? Certainly, Your Honor. Well, as it relates to psychology, I think the line is drawn in that a statute like this one that restricts pure speech about behavior must be subject to the First Amendment. So the line is drawn is if the state can justify that restriction by strict scrutiny, then such a regulation is constitutional. Are you asking us to overturn the statute on its face or to remand and tell Judge Yackel to apply whatever level of scrutiny is appropriate? We're asking the court to invalidate the statute on its face. So, you know, any clown could go out now and say I'm a psychologist, literally a clown. Or could go out and apply these established principles of behavior in consultation. No, because you're asking us to overturn the entire statute. Right. And if the statute is overturned, adults can, consenting adults can apply established principles of behavior with one another. What about overbreadth? Because the doctrine of overbreadth, I think, is that the statute is not unconstitutional in any conceivable application. Your Honor, I would respectfully disagree with that. The doctrine of overbreadth says that the statute is facially invalid if a substantial number of the applications of the statute are protected as compared to the legitimate scope. I thought back in the Stevens case they were playing around with the definition of overbreadth or facial unconstitutionality or there's arguments that they were modifying it. Your Honor, I read Stevens to cite the same substantial overbreadth that I just quoted to you. So as I understand it, the standard is if a substantial number of the applications are protected as compared to the plainly legitimate scope, then the statute is overbroad and must be struck down. You're no longer making a vagueness argument? You're not bringing that on appeal or are you? Your Honor, it's still pressed on appeal. But what I would say to you is that the vagueness challenge matters specifically with reference to the overbreadth challenge. As the Supreme Court said in the Williams case, when we're judging overbreadth, we can take into account the fact that there are these uncertain applications of the law. And if there are these uncertain applications, we don't know where the law is going to apply. That contributes to the overbreadth of the statute. And that's what we have here. The chairman of the board of psychological examiners testified below, Mr. Branaman, that looking at the statute, he wouldn't be able to know without judging the context of each particular case whether a weight watcher's consultant, a golf coach, whether they were practicing psychology by merely doing their jobs. So under your theory, as I understand it, if the statute is facially invalid, then a person would not need to be licensed to perform any kind of what we would normally think of as making appointments with people and calling them in and giving them advice on their personal issues, right? That they can just say whatever they want to and even if they're untrained or whatever. Certainly, Your Honor, at least as long as the statute remains invalid. Now, if the Texas legislature wants to take another shot at licensing psychologists, it can do so. But how would the state do that? I mean, if you were advising the state legislature, how could it possibly be written? Because it would still be regulating things that people say in sessions of psychology with patients or clients. Certainly, Your Honor. And the state can regulate that. It just needs to clear the First Amendment. And what Dr. Serafin suggested in her testimony below and in her appellate briefing, that there would be a legitimate scope of regulation of the practice of psychology in two broad categories. One is in the category where the clients are not able to handle their own affairs or are particularly vulnerable populations. And, in fact, that's what the state asserted its interest was in this statute was to protect the vulnerable populations such as the elderly, the very young, the mentally ill, the addicted. So perhaps the state could write a statute that says you need a license to practice psychology with that population since that's what the state claimed it was trying to protect in the first place. The other thing the state could do is say you need a license to practice psychology in certain areas where there's a captive population. So if we're talking prisons or in hospitals or in public schools or even in the court system, if you want to provide psychological services in the court system, that the government administers and provides a system of justice, the state may be able to justify a regulation that says you need a license to practice in that area. And, again, Your Honor, I should make this point clear. What we are not saying is that the state is not permitted to license psychologists at all. The state can set up a licensing system, can say you need to have this degree, you need to have this supervision, you need to pass this test. I don't understand why this isn't framed as an as-applied challenge. Your Honor, that's the decision that Dr. Serafin made on appeal. I just don't understand that because it seems to me you'd have had a much easier row to hoe on an as-applied challenge. Well, Your Honor, I came in after the briefing was complete in this case, and so I don't know why that is. But the point is this statute does fail on its face under the overbreadth doctrine. I think that one of the central problems we have here is that the district court failed to apply any First Amendment scrutiny whatsoever to the statute. The district court seemed to believe that so long as a state purports to license a profession, purports to license or to regulate a profession, the First Amendment doesn't apply at all. He said well, and he treated it the way the legal and the medical professions have been treated and the way the Ninth Circuit is ruled. So it can't be wholly outside the ballpark of rationality for what he did. I would disagree that that's how the legal profession has been treated. I mean the Supreme Court in the Florida Bar v. the Wentforth case, the O'Reilly case, the court said lawyers don't lose their First Amendment rights simply because they're regulated by the state. That's about advertising. Right, and the advertising in that case, the court said it was speech. Well, right. But it was contacting individuals right after accidents or some sort of traumatic situation. And it really was much more of an advertisement case, which is well settled, I think, in the legal community. You may have to save your time for rebuttal for addressing commercial speech, but I would like to hear about that because I think that's a significant part of this case if you don't get the grand slam on your overbreadth argument. Okay. You have time for rebuttal, sir. Thank you. Mr. Potipoff. May it please the Court, Alex Potipoff for the Appellees. Texas regulates the practice of psychology in order to protect the public from incompetent or unscrupulous practitioners. The district court correctly concluded that this regulatory regime imposes no constitutional. Well, this sounds like, you know, just articulating that makes your case sound uncredible given the background in which this came up, which was an attack on a bona fide candidate for public office. Not an attack on what she was doing for 20 years or many years in Texas in the process of counseling and coaching people. That had never been raised before. It's until she has the gall to run for public office as a Republican and all of a sudden these people all swoop down on her and say you've got to, you know, you have to cease and desist. Your Honor, the district court here concluded that there are no bona fide political free speech issues here, and that conclusion was correct. How can you possibly say that? Well, I would point you first to the Eleventh Circuit decision in Abramson, which held actually that holding oneself out as a psychologist is always commercial speech in every context. And the reason for that, again, as the Eleventh Circuit explained, is there's no expressive content to that. It's not the expression of a viewpoint. It's not the expression of an idea. Well, let's go to what she's arguing, which is that the statute as a whole is overbroad. Because, I mean, she has apparently foresworn the, you know, the titling issue and the scope of her practice as an issue in favor of an overbreadth argument. And it does seem very difficult to me in a profession that deals almost entirely with articulation of back and forth and conversation and so on that there's not some speech in there. And you just said commercial speech. Sure. And, first of all, so Serafine now seems to concede that there is, broadly speaking, a power to license psychology. And there's a number of cases saying that, such as the National Association for Advancement of Psychoanalysis case from the Ninth Circuit. And, broadly speaking, this Court's opinion in Hines, which recognizes a broad power to license professions. And, in particular, with respect to mental health, the state has a particular interest because you're dealing with vulnerable populations and a lot of danger of exploitation. So, given that basic baseline power to regulate psychology, she now has to meet the difficult test for overbreadth. And so one has to compare, even taking the conservative definition of the overbreadth test, one has to compare the plainly legitimate sweep, which is regular regulation of psychology in the way that every state does. That's plainly legitimate. And the question is, is there a substantial amount of protected speech that's being swept in? And I would submit that Serafine's entire argument on that point rests on misreading the statute. And this is something that we've explained in the briefs. So, if you look at Section 501.003.C. You shouldn't accuse Yale lawyers of misreading statute. Well, I'm a Yale lawyer myself, so I'm sure. Yeah, you're arguing to. I'm doing it at this very moment. So, if you look at Section 501.003.C, it defines the practice of psychology. And essentially the entire argument that we just heard from Mr. Guthrie was that there are a lot of things that could conceivably fall under 501.003.C.1, namely the application of established principles, methods, and procedures of describing behavior. But Section C, as we've consistently said, we took this position below and we took this position now, it's conjunctive rather than disjunctive. One has to meet all of the four criteria that are set out in that subsection. And so, really, Serafine and Mr. Guthrie have never put forward an argument that any of the sort of fanciful scenarios that they set out as protected speech could meet all four of the requirements. One of the things Texas has taken a position on is that all states regulate the practice of psychologists. Has there been any evidence in this record that the way, and particularly this definition, the way in which Texas regulates and defines what a psychologist is, is the common scheme in the 50 states? Or we just know that all the states regulate in some way? Your Honor, I would point you to ROA 470 to 473. And that's where we collect the comparable provisions from 45 other states. And in all but a couple of them, they actually have a direct equivalent to our restriction on the use of the word psychologist. Is there a model act that Texas adopted, or do you know? I don't believe there's a model act. I simply think this is a completely common and common sense approach to regulation. What do you make of factually or as a matter of law of what the plaintiff says in her opening brief, that the majority of psychological organizations in the U.S. comprise of psychologists who are not licensed? The majority of the members are not licensed. The American Psychological Association, 40% of those are not licensed. Does this kind of regulation prevent that huge number of people with psychological or psychologist training, maybe even degrees? Does it prevent them from doing anything in the field of psychology? I'm just trying to understand the sweep of this statute that we're talking about, if these numbers that the plaintiff has pointed out in her brief are correct. I mean, are half the people in the American Psychological Association subject to cease and desist orders from the state of Texas if they show up in Texas and do things that at all fit within counseling individuals? Your Honor, so this goes to the exceptions that are contained in the statute, and the most relevant exception is the exception for practicing academics. So both, sure, Your Honor. So if you're a teacher who had a BA in psychology, you can go in and do any kind of behavior modification with students even though you're not licensed, is that what you're saying? No, it has to be in the academic context within the program of your study, or if you're a student, you have to be supervised, you have to identify that you're a student or a resident. This is all set out. So these 60% of members of the APA are all academics? I'm not certain about the composition of the APA. I suspect that's what the majority is. Is there any testimony about that, or is this just raw speculation on your part? I'm not aware of any testimony on that from our side. But the district court did find, and there was support for this finding, certainly not clearly erroneous, that there is a widely accepted definition of the word psychologist. And so when the public hears the word psychologist or psychological, they conclude that it's likely somebody who is licensed by the state and subject to discipline by the state and somebody who is going to— If this statute is overbroad, an easy way to rework it is to define people who are confined with mental problems, for instance, people under the age of maturity, and a couple of other classes as requiring licensed psychologists. And then to have the licensure be the same as a Yale law degree, which is to say it's a pedigree, it's a statement of pedigree, rather than an exclusion from doing work that we commonly recognize as psychological. That would be a different way to approach the licensure of psychology for the legislature. We certainly don't think it's required here. If this court is concerned about the overbreadth issue, the best way to read the statute narrowly is to simply read it in the way we've suggested, namely to read that subsection C as conjunctive. And that, I believe, would take care of all of the fanciful examples that Serafine— Well, tell me how somebody who's a hospice grief counselor is not violating all four of these provisions. Well, if you look at provision, or Romanet C-2, it's not clear that a hospice grief counselor, their job would involve evaluating, preventing, and remediating psychological and behavioral disorders, let alone that it include the sort of techniques that are listed in subsection 3, or that it's based on a systematic body of knowledge and principles acquired in an organized program of graduate study. So, and we recognize— Take the weight loss clinic that was mentioned. Apply that to the conjunctive test that you've described. So it probably does fall under subsection 1. Not at all clear that it falls under subsection 2, namely the behavioral disorders. Well, the head of the Texas board testified that under various circumstances, any of these people might be violating the law. Well, so first of all, that's why— Are you disagreeing with your client's testimony? Well, he was being asked to speculate, and one can imagine any— So your speculation in front of us is better than the head of the board's speculation under oath at trial? Well, I'm not speculating that this is conjunctive. So first of all, there was some doubt at trial as to whether this is conjunctive or disjunctive. It's certainly our position, and the better reading, that this is conjunctive. I agree that there may be some uncertainty about applying each of these subsections, but that's why an as-applied challenge would have been better, because frequently— I would point you, for instance, to the law line decision in the 11th Circuit, which concerned a limitation on the unauthorized practice of law. It's often not entirely clear what the practice of law is, and that's the sort of thing that has to be determined on a case-by-case basis. Or in Walsh-Lager— Yes, but that doesn't mean—I certainly agree with you there, but there are certain things that have been pretty specifically held at this point not to be the unauthorized practice of law, right? Sure, and there— Whereas here, we're still in this netherworld where everything is presumptively psychology, unless the head of the board says, no, I don't think that falls within it. Well, first of all, what the Court said in the law line is some things clearly are the practice of law, and for that reason it was not vague or overbroad, and certainly some things clearly are the practice of psychology, namely hanging out a shingle and taking patients and doing any of the techniques that are described in the statute in order to ameliorate behavior and fix disorders. And if you look at the enforcement history, there's never been any enforcement along any of the lines that she is suggesting. I mean, what about the practice of human resources in big companies? Again, we don't think that is about ameliorating behavioral disorders. It's not based on— Well, I mean, quite often that goes into all sorts of stuff about teamwork and, you know, proper attitudes in the workplace and how to be a leader and how to be a follower. I mean, you know, what you consider is a disorder, I mean, if a person is an angry personality, they'll counsel that person about the angry personality before they'll fire them in most cases. Well, so first I would suggest, even if it's possible to hypothesize some impermissible and overbroad applications of the statute, there has to be a substantial amount of those relative to the plainly legitimate suite. We certainly think it would be an extreme reaction to the possibility of these fanciful hypotheticals to strike down the statute in its entirety. These are not fanciful. Let me ask you about the pickup case. What's the official AG position on the pickup case? Well— Is that a legitimate regulation of psychology? Well, we—I don't know that we have an official position on that case. We agree with the general analysis that was undertaken by the court, namely the application of Justice White's concurrence in Lowe. So suppose somebody becomes the head of the board who decides that since marijuana is becoming legal in all these other states, it's not appropriate for a psychologist to purport to counsel somebody out of marijuana addiction anymore. And suppose that's a—is that an enforceable restriction on the practice of psychology? I'm not sure that the board has any power to dictate particular positions that psychologists take. Well, you say there are established practices and methods. Sure, but the board doesn't get to decide what those— Not yet. Well, again, that's why an as-applied challenge would be better. And I'm not sure how the possibility of something like this is appropriately addressed by striking down the kind of statute that exists in all 50 states. Well, maybe—I mean, maybe it has to do with these grounds, but you can't say that it doesn't involve speech. Oh, absolutely it involves speech, but so does tour guiding, and this court upheld a licensing requirement of tour guides in Kagan. And so does veterinary medicine, and this court upheld a condition on practicing veterinary medicine in Hines. So, again, that's just the framework that was articulated by Justice White in Lowe v. SEC. But that was under—those were both under—well, at least the tour guide was intermediate scrutiny, right? That is correct, but we would submit that there is no case that I'm aware of that has applied anything higher than intermediate scrutiny to general licensing provisions on a profession. And we've cited any number of cases along those lines. And so the incidental impact on speech that occurs when one imposes limits on joining a profession are not a First Amendment violation. That's what Justice White wrote in Lowe, and this court adopted that in Hines. These limits aren't incident. I mean, these go to whether you can do it at all. There's nothing incidental about this regulation. Well, I think that Kagan is precisely like that. It went to whether one could work as a tour guide at all. Yeah, and all you had to do there was pass it. You know, I was on the panel. Fifty dollars, drug tests every two years, and pass a little test on New Orleans history. That is simply not the same qualitative regulation as a two-year practicum, a medical degree, quasi-medical degree, and so on. Well, sure, that's because the state has concluded that there is much more danger associated with psychology than there is with tour guiding. No, the state is—the licensed psychologists have decided that they don't want competition from other people. It seems pretty— Well, again, that may be a sound public choice analysis, but I don't see anything like that in the cases. The cases have given a very wide berth to the states to establish licensing requirements, and I'm not aware of any case which focuses on precisely how difficult it is to join a particular profession and applies higher scrutiny as a result of that. And also— Because the other professions aren't inherently, except perhaps for test-taking, they are not inherently based on speech as the insight to the soul. And psychology involves affecting the soul and the personality, which are revealed, you know, aside from tests, from certain physical quirks, but through speech. Right. Well, so first of all, psychology does involve activities other than speech, even looking at the statute, the list of techniques that are covered. It includes things like biofeedback, which I understand is something like hooking the patient up to a machine and displaying their own biometric characteristics to them. But it also does not involve any more speech than being a tour guide. You know, being a tour guide is using speech to get to the soul of a city, and no more speech than being a lawyer or— Let me stop you right there. That was pretty good on getting to the soul of the city, by the way. Let me ask you about the one matter in here that is perhaps strict scrutiny. The one as-applied challenge that we've just heard would still be in play is the use of the word psychologist or the other two derivatives of that word. It seems to me on what started all of this, the use of the word psychologist on her campaign website, that that is strict scrutiny, political speech. Is it? And if not, why not? It's not. And again, I would point this court to Abramson, where the court said that holding oneself out as a psychologist is always commercial speech. Well, that may be what that court said, but here it seems to me that she's listing her credentials, as campaign websites should. She has training in psychology. She has participated as an educator in psychology. So in the very heightened world of political speech, which is supposed to be the key protection of the First Amendment, of speech part of the First Amendment, she is saying in shorthand that I am a psychologist. If strict scrutiny applies, then whatever your interest is, it has to be employed in the least restrictive way. And at worst, it seems to me that perhaps she could say that she's an unlicensed psychologist. I just don't understand why the word psychologist can survive even intermediate scrutiny. But I would say strict scrutiny when you're talking about political speech. So first, again, we would insist that this is not strict scrutiny simply because it's not, for instance, like in Buckley, discussion of public issues and debate on the qualifications of candidates. We think that when one is holding oneself out as a licensed professional, which she is in effect doing, as the district court found, by holding herself out as a psychologist, that's always commercial speech. I'm not sure even Serafine would suggest that in the political context she's entitled to call herself, for instance, a certified public accountant or a licensed psychologist. So the question is not is this in the political context, but rather is her speech sufficiently misleading, and that's something that should be analyzed under the central Hudson framework. She's not looking for commercial patience. She's looking for voters. And I'm not sure if commercial speech would fit in the political category. You make every candidate just a retailer and subject only to intermediate scrutiny. We don't have much time left, and we'll have to work with that. Thank you, Your Honor. Okay. Thank you. Mr. Guthrie. I'd like to respond briefly to the point about the conjunctive interpretation of the statute and then turn to the as-applied challenge in political speech. The interpretation proffered by the State, this narrower construction, cannot be squared with the text of the statute. The legislature did not define the practice of psychology. It used broad, non-limiting terms, saying the practice of psychology includes and addresses. So if the court were to read it narrowly, like the State suggests, it would require the court to rewrite those includes and addresses as requires, which is something this court cannot do when it's interpreting a State statute. I'd also note, and maybe this is the more important point, that the State's interpretation, saying that you must be doing all four subdivisions in order to be practicing psychology, would render this statute so under-inclusive as to eviscerate the very purpose that the State says it's trying to uphold here. Because you must be doing all four, subsection four says you must be applying principles acquired in a program of graduate study. So to be practicing psychology, you need to be doing number four, applying principles from a graduate study program. So if you're not applying principles from a graduate study program, you're not practicing psychology in the first place. Therefore, you don't need a license. So the State's interpretation would legitimize the very kind of speech they say they're trying to outlaw, which is untrained psychology. JUSTICE KENNEDY Counselor, regardless of problems that sort of reading does, creates potentially, this normal statutory interpretation looking at this, and with that and coming right before the last of the four examples or four categories that are described, conjunctive is the normal way, the usual way that we would interpret such a statute. So are the problems that such a reading creates really for us to resolve, or is it just something the legislature would have to deal with? MR. GOLDBERG Well, two answers. One, I would disagree that when a list starts with includes and then has an and, that it's always conjunctive. JUSTICE KENNEDY Well, the includes is in the first subpart. It's not in the lead-in of subpart C, the practice of psychology colon, and then includes are only in subparts. JUSTICE GOLDBERG Actually, right. Subpart 1 includes. Subpart 2 addresses. Subpart 3 includes. MR. GOLDBERG And 4 is based on. And I would say as a matter of statutory construction, the legislature is clearly crafting a non-limiting saying that the practice of psychology, it includes these things, and it addresses these things, and it includes these things. In addition, with the under-inclusive issue that I just presented to your honors, the doctrine of constitutional avoidance, of adopting a narrower construction, it's circumscribed in a situation like we have here, where the federal court is interpreting a state statute. The Supreme Court in Boots v. Berry said federal courts do not have the power to adopt a limiting construction of a state statute unless such construction is reasonable and readily apparent. And given the fact that it eliminates the state's purpose for this statute, such a construction is not readily apparent from the text. And, your honor, I'll turn now to the as-applied challenge. And, Judge Southwick, you're exactly right. This statute, in limiting what Dr. Serafin can call herself in a political context, demands strict scrutiny, and it cannot pass that test in this case. Even putting aside the definitional argument of whether Dr. Serafin is, in fact, a psychologist, we can put that aside for a moment. Even if that had been a blatant lie, and it wasn't, but even if it had been a blatant lie, it would have been fully protected speech under the First Amendment. She could call herself a medical doctor in networks. Your honor, I believe that's what the Alvarez case says from the United States Supreme Court. It struck down a statute that made it a crime to falsely claim that you were a Medal of Honor winner. And in that case the court looked at the speech at issue, said this is speech, and applied strict scrutiny and struck the statute down. So in this case, even if Dr. Serafin had lied about being a psychologist or lied about being a lawyer, the state has to clear strict scrutiny because it's a restriction on speech. And under the strict scrutiny test, or even as your honor acknowledged, under the intermediate scrutiny test, there were less restrictive means here to limit the harm that the state claimed to be limiting. It could limit the term licensed psychologist. It could have involved a government-created database. If the goal is to protect people from unlicensed practitioners in psychology, the state can offer a database that says, here, find all the licensed psychologists so you're not confused. I've got to understand your position. The only as-applied challenge is the use of any of the three magic words in the political advertisement. No, as we stated in our briefing, we are pressing that in the political context and in the commercial context. I'm just addressing the political context here given the time that I have. All right. Thank you, Counsel. Okay. Thank you very much. We will stand in recess for about ten minutes.